UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GLEN BARNHILL, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:10-00178 |
| | ) | JUDGE HAYNES |
| | ) | |
| DAVID GOETZ, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## **M E M O R A N D U M**

Plaintiffs, Glen Barnhill and Justin Cochran, filed this action against the Defendants, David Goetz in his official capacity as the Commissioner of the Tennessee Department of Finance and Administration and Darin Gordon in his official capacity as the Deputy Commissioner of the Tennessee Department of Finance and Administration and the Director of TennCare, a waiver plan under the Medicaid Act, 42 U. S. C.§1396a et seq.. Plaintiffs assert claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), alleging that TennCare's placement of the Plaintiffs in nursing home facilities instead of providing home health care violated the ADA and Rehabilitation Act. Plaintiffs seek declaratory and injunctive relief requiring Defendants to provide in-home nursing services for the Plaintiffs. Plaintiffs also moved for a preliminary injunction that was set for a hearing, but the parties reached an accommodation and requested a stay of all proceedings. The Court entered an Order staying proceedings between Plaintiffs and Defendants Goetz and Gordon.

Vanderbilt University Medical Center ("VUMC") moved to intervene and the Court granted that motion. (Docket Entry Nos. 47 and 54). In its amended complaint against Plaintiff Barnhill, Defendant Goetz, Defendant Gordon and United Healthcare Plan of River Valley, Inc., a/k/a AmeriChoice of Tennessee ("AmeriChoice"), VUMC seeks declaratory relief that it is entitled to discharge Barnhill and that such a discharge would not violate the Americans with Disabilities Act, the Medicaid discharge provisions, 42 C.F.R. Part 482, the Emergency Medical Treatment and Active Labor Act ("EMTALA"), or any other applicable law. VUMC also seeks an order requiring the State Defendants and/or AmeriChoice to provide a discharge plan for Barnhill that does not violate VUMC's obligations under applicable law as well as to compensate VUMC for its medical services provided to Barnhill. Alternatively, VUMC seeks an order directing the State Defendants to require AmeriChoice to compensate VUMC for those services.

Before the Court is Defendants' Goetz's and Gordon's motion to dismiss (Docket Entry No. 73) under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, contending, in sum: (1) that VUMC's claim for monetary relief from the State Defendants is barred by the Eleventh Amendment; (2) that VUMC's declaratory relief claim against the Defendants fails to present an actual controversy required by the Declaratory Judgment Act; (3) that VUMC's claim for injunctive relief based upon state-law is barred by the sovereign immunity doctrine and the Eleventh Amendment; (4) that VUMC lacks standing for any injunctive relief; and (5) that VUMC's amended complaint is insufficient under Rule 8(a)(2) of the Federal Rules of Civil Procedure.

In response (Docket Entry No. 83), VUMC argues that its complaint states viable claims for relief for the Defendants' violations of federal law; that sovereign immunity doctrine and the

Eleventh Amendment do nor bar its claims and that VUMC's provisions of medical care and services for Barnhill, a TennCare enrollee establishes its standing to assert these claims against the State Defendants.

For the reasons set forth below, the Court concludes that Defendants' motion to dismiss should be denied. Under Supreme Court and Sixth Circuit precedents, the Medicaid Act and other federal laws giving rise to VUMC's claims are federal laws. The Medicaid Act was enacted under the Spending Clause of the Constitution and funded principally with federal funds. Thus, the Eleventh Amendment does not bar VUMC's federal law claim for reimbursement under the Medicaid Act. VUMC's factual allegations are sufficent to give rise to a case or controversy between the parties and as a health care provider, VUMC has standing under the Medicaid Act to assert a claim for reimbursement for its medical services to Barnhill, a TennCare enrollee in a Medicaid approved state plan.

## I. ANALYSIS OF VUMC'S AMENDED COMPLAINT

Plaintiff, Glen Barnhill, suffered a spinal cord injury in 1994, rendering him a quadriplegic and ventilator dependent. (Docket Entry No. 64, Amended Complaint at ¶ 15). Barnhill requires constant ventilator support and care due to his respiratory complications that require suctioning or other procedures. Id. at ¶ 18. Beginning in March 2003, Defendants and/or AmeriChoice provided Barnhill with 24/7 home health care under the TennCare program. Id. at ¶ 16. On December 1, 2009, Defendants and/or AmeriChoice terminated Barnhill's TennCare benefits, including his home health care. Id. at ¶ 17.

On December 3, 2009, Barnhill, who was having difficulty breathing, was transported by ambulance to the VUMC's emergency department for treatment. Id. at ¶¶ 20, 22. On December

4, 2009, Barnhill was admitted to the VUMC. Id. at ¶ 23. On December 24, 2009, Defendants and/or AmeriChoice reinstated Barnhill's TennCare eligibility, retroactively to December 2, 2009, but for the first ten days of care, Defendants and/or AmeriChoice refused to pay the in-home health care provided by VUMC. Id. at ¶¶ 24-25, 28, 40. Further, Defendants and/or AmeriChoice did not designate any alternative sources of treatment or medical care for Barnhill and did not provide VUMC with appropriate discharge options. Id. at ¶¶ 73, 79. In its view, VUMC could not discharge Barnhill to his home. Id. at ¶ 26. Further, Barnhill refused to be discharged to a nursing home. Barnhill informed VUMC that a discharge by VUMC without his consent would violate federal law, including the ADA and the Medicaid discharge provisions. Id. at ¶¶ 49-51, 68-69.

According to VUMC, Barnhill is a member of the class of plaintiffs in Grier v. Goetz, No. 3:79-cv-03107, in this District. Id. at ¶ 34. VUMC alleges that neither the State Defendants nor AmeriChoice complied with the applicable notice requirements of the Grier consent decree (No. 3:79-cv-03107, Docket Entry No. 1538, § C(2) at pp. 13-18). Thus, VUMC asserts that the State Defendants' and/or AmeriChoice's refusals to pay for VUMC's services for Barnhill, a TennCare enrollee violates federal law and the State Defendants and/or AmeriChoice should be ordered to pay for such services. Id. at ¶¶ 35-36, 82. In addition, VUMC assert that "Defendants and/or AmeriChoice are liable to compensate VUMC under principles of equitable estoppel or quasi-contract," and that "Defendants and/or AmeriChoice breached the terms of their contract with Vanderbilt." Id. at ¶ 86. VUMC contends that the Eleventh Amendment does not bar such relief against AmeriChoice nor does it preclude AmeriChoice from compensating VUMC for services rendered. Further, VUMC asserts that any injunctive relief requiring Defendants and

4

AmeriChoice to supply discharge options does not violate the Eleventh Amendment. Id. at ¶¶ 87-89.

VUMC also seeks "declaratory relief that it is entitled to discharge Mr. Barnhill, and that such a discharge would not violate the ADA, the Medicaid discharge provisions, EMTALA, any other federal law, or any other applicable law." Id. at 14, ¶ 2. As stated earlier, in its earlier care,[1] Barnhill allegedly objected to his discharge from VUMC.

## II. CONCLUSIONS OF LAW

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction that may consist of either a "facial attack" or a "factual attack." O'Bryan v. Holy See, 556 F.3d 361, 375 (6th Cir. 2009).

> "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." And, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true.... If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

Id. at 375-76 (citations omitted). For a factual attack, "'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" (RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir. 1996)) (citation omitted). Moreover, VUMC bears the burden of proof that jurisdiction exists. Id.

---

[1] Although the Defendants and Barnhill have since entered into a settlement agreement and Barnhill has been discharged, VUMC notes that agreement is for only a "six-month trial period" and that the settlement agreement fails to specify adequate safeguards to insure that VUMC will not be required to provide medical care for Barnhill in the foreseeable future.

5

Upon a motion to dismiss under Rule 12(b)(6), "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)) (citation omitted). The Court must "'construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted). The Court "'need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" Id. at 903 (citations and quotation marks omitted).

As to VUMC's request for compensation for its past medical services to Barnhill, VUMC contends that this claim fits squarely within the Ex parte Young exception to sovereign immunity. Although not specifically alleged in its amended complaint[2], VUMC asserts that

---

[2] As an initial matter, the Court notes that VUMC did not cite 42 U.S.C. § 1396a(a)(30)(A) for its claims in its amended complaint. Federal Rule of Civil Procedure 8(e) states that "Pleadings must be so construed as to do justice." In addressing this rule, the Sixth Circuit stated:

> This rule directs courts to construe pleading liberally within the standards of the notice-pleading regime mandated by the Federal Rules of Civil Procedure. As this court has stated, "the fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure." Therefore, the Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint. Indeed, this court has made clear that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states."

Minger v. Green, 239 F.3d 793, 799 (6th Cir. 2001) (citations omitted). Thus, given the nature of VUMC's factual allegations, Plaintiffs original claims based on this authority, the Court considers VUMC's claim. Under 42 U.S.C. §1396a(a)(30)(A), a State Medicaid plan for medical services

Defendants have violated 42 U.S.C. § 1396a(a)(30)(A) of the Medicaid Act, and that the Medicaid Act bestows upon healthcare providers independent federal rights that the providers can enforce in federal court. The State Defendants argue that given AmeriChoice's status as a party, VUMC cannot justify an injunction against the State Defendants and the Eleventh Amendment bars injunctive relief based on state law.

As to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974).

In Ex parte Young, 209 U.S. 123, 155-56 (1908), the Supreme Court explained that the Eleventh Amendment does not bar federal courts from granting injunctive relief against state officials because: "An injunction to prevent [a state official] from doing that which he has no legal right to do is not an interference with the discretion of the officer." "Since Ex parte Young,

---

must:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area . . . .

42 U.S.C. § 1396a(a)(30)(A).

7

... it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he deprived another of a federal right under color of state law." Hafer v. Melo, 502 U.S. 21, 30 (1991) (quoting Schever v. Rhodes, 416 U.S. 232, 237 (1974) (overruled on other grounds)). Such relief may be granted even if state treasuries are impacted as a necessary result of the prospective relief granted. Edelman, 415 U.S. at 667-68.

As to payment for VUMC's former services, in Wilder v. Virginia Hosp. Assn., 496 U.S. 498, 510-12 (1990), where hospitals challenged the reasonableness of Medicaid reimbursement rates, the Supreme Court held that the Medicaid Act, as amended, created an enforceable right for health care providers to challenge reimbursement rates. "In light of Pennhurst and Wright, we conclude that the Boren Amendment imposes a binding obligation on States participating in the Medicaid program to adopt reasonable and adequate rates and that this obligation is enforceable under § 1983 by health care providers." Id. at 512. In Wilder, the Supreme Court observed that upon approval of a State plan under the Boren amendment to the Medicaid Act, "[t]he State plan '*must*' 'provide for payment ... of hospital[s]." Id. (emphasis in original and quoting 42 U.S.C. § 1396a(a)(13)(A))

Conflicts exist among the circuits over which Medicaid statutory provisions for medical assistance create an enforceable right that state officials must provide medical services directly. See Mandy R. v. Owens, 464 F.3d 1139, 1146 (10th Cir. 2006) (citing inter alia Westside Mothers v. Olszewski, 454 F.3d 532, 540 (6th Cir. 2006) (Westside Mothers II ). The Tenth Circuit held that "[t]he State may pay for medical services, but it need not provide them." Id. Westside Mothers II held that Section 1396a(a)(30) did not create an enforceable right to medical assistance to be provided "directly" by the State. 454 F.3d at 540. Wilder, however,

8

clearly states that under the provisions of Section 1396a(a)(13)(A), "[t]he State plan '*must*' 'provide for payment . . . of hospital[s]." Wilder, 496 U.S. at 512. (emphasis in the original). Yet, the health care provider cannot be paid above the Medicaid rate for the particular services. 42 U.S.C. § 1396a(n)(2). Detroit Receiving Hosp. Univ. Ctr. v. Sebelius, 575 F.3d 609, 612 (6th Cir. 2009).

To be sure, federal courts cannot enjoin state officials on the basis of state law claims. Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 106 (1981). (The "entire basis for the doctrine of Young . . . disappears" when "a plaintiff alleges that a state official has violated state law."). Yet, the Sixth Circuit has rejected the characterization of Medicaid reimbursement as creating any contract. In Westside Mothers I[3], the Sixth Circuit stated, "The Supreme Court has held that the conditions imposed by the federal government pursuant to statute upon states participating in Medicaid and similar programs are not merely contract provisions; they are federal laws." Westside Mothers v. Haveman, 289 F.3d 852, 858 (6th Cir. 2002)(citing Bennett v. Kentucky Dep't of Educ., 470 U.S. 656, 669 (1985)). The Sixth Circuit concluded, "The fact that these provisions have the binding force of law means that Medicaid and similar federal grant programs are not subject merely to doctrines of contract interpretation." Id.

In Tennessee Assn. of Health Maint. Orgs. Inc.v. Grier, 262 F.3d 559, 565 (6th Cir. 2001), the Sixth Circuit held that where a Consent Decree grants injunctive relief, the common law and Fed. R. Civ. P. 65(d) bind not only the State, but its contractors that participate in the implementation of the Consent Decree. The MCCs "are agents of the State and are bound by the consent decree to which the state was a party." Id. To be sure, Grier limited the contractors'

---

[3] Westside Mothers II did not affect this aspect of Westside Mothers I.

liabilities to the extent of their contract with the State. Id. Moreover, as a matter of law, "the Tennessee Department of Health and Environment is the single state agency responsible for the administration of the Medicaid program." Linton v. Comm'r of Health and Envit., 779 F. Supp. 925, 928 (M.D. Tenn. 1990), affd. on other grounds 65 F.3d 508 (6th Cir. 1995). The State Defendants cannot delegate the administration of this program nor vest Americhoice with their ultimate responsibilities under the Medicaid Act. The Court concludes that as a matter of federal law, the State Defendants and Americhoice operate as a single entity, with the State Defendants ultimately responsible for payment of covered medical services that VUMC provided to Barnhill as a TennCare enrollee.

In its amended complaint, VUMC seeks declaratory relief as to whether its discharge of Barnhill would violate the ADA, the Medicaid discharge provisions, EMTALA, or any other law. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), states in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Id.

As to the appropriateness of an action under the Declaratory Judgment Act, the Sixth Circuit explained that the Act:

> provides the mechanism for seeking pre-enforcement review of a statute. Declaratory judgments are typically sought before a completed "injury-in-fact" has occurred, but must be limited to the resolution of an "actual controversy." When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review.

* * *

>The existence of an "actual controversy" in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act.

Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 279 (6th Cir. 1997) (citations and footnote omitted).

>In defining what constitutes an "actual controversy," the Supreme Court stated:
>
>A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised [under the Act] . . . .

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937) (citations omitted). "[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." Cardinal Chemical Co. v. Morton Intern., Inc., 508 U.S. 83, 95 (1993).

Defendants contend that there is not an actual controversy between Defendants and VUMC as to VUMC's right to discharge Barnhill. In its amended complaint, VUMC alleges that Barnhill notified VUMC that a discharge by VUMC, against his wishes, would constitute a violation of federal law by VUMC. (Docket Entry No. 64, Amended Complaint at ¶¶ 51-69). VUMC alleges that such a discharge of Barnhill would not constitute a violation of the ADA, the Medicaid discharge provisions, EMTALA, or any other applicable law. Id. at ¶ 70. Given Barnhill's TennCare status, the circumstances of Barnhill's past discharge from VUMC, the other Defendants' refusals to pay for VUMC medical services and the prospect of a future

recurrence in the event the other parties' settlement agreement is not fully consummated, the Court concludes that an actual controversy as to Barnhill's discharge exists between VUMC and the Defendants.

According to VUMC's claims, Defendants are required to compensate VUMC for its care provided to Barnhill because "Defendants . . . violated the notice requirements of the Grier consent decree, which makes their refusal to pay for treatment null and void," and that "[b]ecause Defendants . . . violated the notice provisions of the Grier consent decree, they are required to pay the full, reasonable, amount of VUMC's care for Mr. Barnhill." (Docket Entry No. 64, Amended Complaint at ¶¶ 36, 82, 86). The Grier plaintiff class includes "all present and future enrollees in the TennCare program," with the term "enrollees" defined as "individuals eligible for, and enrolled in" the TennCare program. Grier, No. 3:79-cv-03107, Docket Entry No. 1538, § G at p. 55, § B ¶ 4 at p. 3.

Defendants next assert that VUMC's amended complaint fails to assert legal bases in support of injunctive relief. Defendants contend that, although VUMC alleges that Defendants failed to provide VUMC with appropriate discharge options, VUMC does not identify the federal law that establishes the Defendants' legal duty to do so. As to VUMC's allegations that Defendants failed to comply with the Grier consent decree, Defendants contend Grier cannot create or establish a breach of any duty because: (1) VUMC does not plead a factual basis for Defendants' alleged noncompliance of the notice requirement; (2) VUMC only cites the consent decree in reference to its claim for compensatory relief that is barred by the Eleventh Amendment; and (3) VUMC lacks standing to invoke the Court's decisional and remedial powers for violation of the Consent Decree.

To be sure, VUMC is not a party to the Grier consent decree and lacks standing to enforce provisions of that consent decree. See Blue Chips Stamps v. Manor Drug Stores, 421 U.S. 723, 750 (1975) ("[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it."). Yet, Barnhill does possess standing to challenge the denial of his TennCare benefits. If Barnhill prevails, then VUMC has the right to reimbursement for its medical services covered under the Medicaid Act. In this context, the Court concludes that VUMC has standing to pursue this declaratory judgment.

For the reasons stated above, the Court concludes that the Defendants' motion to dismiss (Docket Entry No. 73) should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge